# RECORD NO. 15-4329(L); 15-4330

In The

# United States Court Of Appeals
## For The Fourth Circuit

### UNITED STATES OF AMERICA,

*Plaintiff – Appellee,*

v.

### DARIUS DONNELL FREEMAN;
### WINCY JOSEPH,

*Defendants – Appellants.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
AT STATESVILLE**

————————————

## BRIEF OF APPELLANTS

————————————

C. Melissa Owen
TIN, FULTON, WALKER
  & OWEN, PLLC
301 East Park Avenue
Charlotte, NC  28203
(704) 338-1220

Brian M. Aus
BRIAN AUS,
  ATTORNEY AT LAW
P.O. Box 1345
Durham, NC  27702
(919) 666-7690

*Counsel for Appellant
  Darius Freeman*

*Counsel for Appellant
  Wincy Joseph*

*Gibson*MOORE APPELLATE SERVICES, LLC
206 East Cary Street ♦ P.O. Box 1460 (23218) ♦ Richmond, VA  23219
804-249-7770 ♦ www.gibsonmoore.net

# <u>TABLE OF CONTENTS</u>

**PAGE:**

TABLE OF AUTHORITIES ....................................................................................v

STATEMENT OF JURISDICTION...................................................................1

ISSUES ON APPEAL ........................................................................................1

STATEMENT OF THE CASE............................................................................2

    I.    The Carjacking .......................................................................2

    II.    The Bank Robbery ..................................................................3

    III.    What Happened After the Bank Robbery .............................4

    IV.    Procedural History, Trial, and Suppression Hearing ...........7

    V.    Verdict and Sentence ..........................................................10

SUMMARY OF THE ARGUMENTS ..............................................................11

ARGUMENT ....................................................................................................13

    I.    THE DISTRICT COURT ERRED IN DENYING MR. FREEMAN'S MOTION TO SUPPRESS EVIDENCE OF A PHOTOGRAPHIC LINEUP IDENTIFICATION WHERE THE IDENTIFICATION PROCEDURE WAS UNDULY SUGGESTIV ........................................................................13

        A.    Standard of Review ..................................................14

        B.    Analysis ...................................................................14

i

1.     The district court's finding that there was no evidence that Ms. Wilson saw the bank robbery photographs prior to viewing the photographic lineup was clearly erroneous.....................................................14

2.     The identification procedure was unduly suggestive......15

3.     The photo lineup identification procedure was unreliable.........................................................................19

II.    PURSUANT TO TITLE 18, SECTION 924(c) OF THE UNITED STATES CODE MUST BE VACATED AS BANK ROBBERY IS NOT "A CRIME OF VIOLENCE" IN THIS CASE......................20

A.    Standard of Review ...................................................21

B.    Analysis...................................................................21

1.     Bank Robbery is not a "crime of violence" under the "force clause" of 924(c) ...................................................22

2.     Mr. Joseph's and Mr. Freeman's convictions cannot be sustained under the "residual clause" of 924(c). ........24

III.   THE DISTRICT COURT COMMITTED PLAIN ERROR IN ITS JURY INSTRUCTION THAT DEFINED BANK ROBBERY AS "A CRIME OF VIOLENCE" UNDER TITLE 18 UNITED STATES CODE SECTION 924(c) AND IMPROPERLY INCLUDED THE "RESIDUAL CLAUSE" AS PART OF THE DEFINITION OF A "CRIME OF VIOLENCE." ...............................25

A.    Standard of Review .................................................26

B.    Analysis....................................................................26

1.  The district court's jury instruction that bank robbery is a "crime of violence" was erroneous............................26

2.  The district court's jury instruction which used the "residual clause" of Section 924(c) to define a "crime of violence" was erroneous .............................................27

3.  The 924(c) conviction must be set aside as the verdict form does not specify whether the jury relied on the "force clause" or "residual clause" to convict Mr. Joseph and Mr. Freeman ..................................................28

IV.  MR. FREEMAN'S SENTENCE FOR COUNT FOUR IMPOSED PURSUANT TO TITLE 18, SECTION 924(c) OF THE UNITED STATES CODE MUST BE VACATED AS CARJACKING IS NOT "A CRIME OF VIOLENCE" IN THIS CASE. .........................29

A.  Standard of Review. ....................................................30

B.  Analysis. ....................................................................30

V.  THE DISTRICT COURT COMMITTED PLAIN ERROR IN ITS JURY INSTRUCTION THAT DEFINED CARJACKING AS "A CRIME OF VIOLENCE" UNDER TITLE 18 UNITED STATES CODE SECTION 924(c) AND IMPROPERLY INCLUDED THE "RESIDUAL CLAUSE" AS PART OF THE DEFINITION OF A "CRIME OF VIOLENCE." ................................................31

A.  Standard of Review ....................................................33

B.  Analysis. ....................................................................33

CONCLUSION ..........................................................................35

REQUEST FOR ORAL ARGUMENT ....................................................35

iii

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# <u>TABLE OF AUTHORITIES</u>

**PAGE(S):**

## <u>CASES</u>:

*Bowlds v. State,*
    834 N.E.2d 669 (Ind. Ct. App. 2005) ...........................................................17

*Brotherhood of Carpenters v. United States,*
    330 U.S. 395, 67 S. Ct. 775 (1947)........................................................29, 35

*Descamps v. United States,*
    570 U.S. ___, 133 S. Ct. 2276 (2013) ...................................................*passim*

*Johnson v. United States,*
    576 U.S. ___, No. 13-7120 (Slip Op. June 26, 2015)...........................*passim*

*Manson v. Brathwaite,*
    432 U.S. 9 (1977)......................................................................................15, 19

*Neil v. Biggers,*
    409 U.S. 188 (1972).......................................................................15, 16, 18, 19

*Perry v. New Hampshire,*
    132 S. Ct. 716 (2012) ....................................................................................15

*Sandstrom v. Montana,*
    442 U.S. 510, 99 S. Ct. 2450 (1979)......................................................28, 29, 34

*Satcher v. Pruett,*
    126 F.3d 561 (4th Cir. 1997) ........................................................................16

*Simmons v. United States,*
    390 U.S. 377 (1968)..........................................................................16, 17, 18

*Stromberg v. California,*
    283 U. S. 359, 51 S. Ct. 532 (1931)..............................................................28

*United States v. Cabrera-Umanzor,*
    728 F.3d 347 (4th Cir. 2013) ........................................................................23

*United States v. Casteel*,
    638 F.Supp.2d 1089 (S.D. Iowa 2009) .........................................17

*United States v. Evans*,
    416 F.3d 298 (4th Cir.2005) ................................................21, 30

*United States v. Fuertes*,
    Nos. 13-4755, 13-4931
    (4th Cir. Slip Op. August 18, 2015, pp. 21-22) .......................22, 23

*United States v. Hampton*,
    628 F.3d 654 (4th Cir. 2010) ...................................................14

*United States v. Olano*,
    507 U.S. 725, 113 S. Ct. 1770 (1993)....................................*passim*

*United States v. Saunders*,
    501 F.3d 384 (4th Cir. 2007) .........................................16, 17, 19

*United States v. Terry*,
    911 F.2d 272 (9th Cir.1990) ................................................26, 33

*United States v. Tillery*,
    702 F.3d 170 (4th Cir. 2012) ..............................................26, 33

*United States v. Walker*,
    75 F.3d 178 (4th Cir. 1996) .....................................................22

*United States v. Woodrup*,
    86 F.3d 359 (4th Cir. 1996) ......................................23, 27, 30, 34

## STATUTES:

18 U.S.C. § 2 ......................................................................1, 7

18 U.S.C. § 924(c)............................................................*passim*

18 U.S.C. § 924(c)(3) ...........................................................21, 22

18 U.S.C. § 924(c)(3)(A) ..........................................................22

18 U.S.C. § 924(c)(3)(B)...................................................................22

18 U.S.C. § 924(e)(1).......................................................................23

18 U.S.C. § 924(e)(2)(B)..................................................................24

18 U.S.C. § 2113 ...............................................................................1

18 U.S.C. § 2113(a)..................................................................*passim*

18 U.S.C. § 2113(d) ...........................................................................7

18 U.S.C. § 2119 ..........................................................1, 7, 29, 30

18 U.S.C. § 3231 ................................................................................1

28 U.S.C. § 1291 ...............................................................................1

**<u>RULE</u>:**

F.R.A.P. 34.......................................................................................35

## STATEMENT OF JURISDICTION

The United States District Court for the Western District of North Carolina had original jurisdiction pursuant to 18 U.S.C. § 3231 because this was a criminal case alleging violations of 18 U.S.C. §§ 924(c), 2113, 2119, and 2.   On appeal, this Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## ISSUES ON APPEAL

I.      WHETHER THE DISTRICT COURT ERRED IN DENYING MR. FREEMAN'S MOTION TO SUPPRESS EVIDENCE OF A PHOTOGRAPHIC LINEUP IDENTIFICATION WHERE THE IDENTIFICATION PROCEDURE WAS UNDULY SUGGESTIVE.

II.     WHETHER MR. JOSEPH'S AND MR. FREEMAN'S SENTENCES IMPOSED PURSUANT TO TITLE 18, SECTION 924(c) OF THE UNITED STATES CODE MUST BE VACATED AS BANK ROBBERY IS NOT "A CRIME OF VIOLENCE" IN THIS CASE.

III.    WHETHER THE DISTRICT COURT COMMITTED PLAIN ERROR IN ITS JURY INSTRUCTION THAT DEFINED BANK ROBBERY AS "A CRIME OF VIOLENCE" UNDER TITLE 18 UNITED STATES CODE SECTION 924(c) AND IMPROPERLY INCLUDED THE "RESIDUAL CLAUSE" AS PART OF THE DEFINITION OF A "CRIME OF VIOLENCE."

IV.     WHETHER MR. FREEMAN'S SENTENCE FOR COUNT FOUR IMPOSED PURSUANT TO TITLE 18, SECTION 924(c) OF THE UNITED STATES CODE MUST BE VACATED AS CARJACKING IS NOT "A CRIME OF VIOLENCE" IN THIS CASE.

V.      WHETHER THE DISTRICT COURT COMMITTED PLAIN ERROR IN ITS JURY INSTRUCTION THAT DEFINED CARJACKING AS "A CRIME OF VIOLENCE" UNDER TITLE 18 UNITED STATES CODE SECTION 924(c) AND IMPROPERLY INCLUDED THE "RESIDUAL

1

CLAUSE" AS PART OF THE DEFINITION OF A "CRIME OF VIOLENCE."

## STATEMENT OF THE CASE

### I.    The Carjacking.

On May 20, 2013, at approximately 5:15 a.m., Princess Wilson drove to the Circle K gas station on South Boulevard in Charlotte, North Carolina to buy cigarettes. (JA 314); (JA 324).  Her car was a silver 2002 Buick Century, with  North Carolina license plate number ACN1991 and a bumper sticker that displayed the statement, "Thank God my mom was pro-life." (JA 324-325).  She had left her car keys in the vehicle.  (JA 327).

When Ms. Wilson exited the Circle K, a man ran toward her and pointed a silver revolver at her.  (JA 329).  The man said "Back up. Back up" from her car.  Ms. Wilson threw up her hands and complied.  (JA 329).  The man got in her car, started it and sped off.  (JA 330).

Ms. Wilson described the suspect as wearing jeans, a white T-shirt, reflector sunglasses and a black baseball cap.  She had not seen this person before.  (JA 330). She gave law enforcement a description of the robber and of her vehicle.  (JA 332). Ms. Wilson was subsequently presented a photographic lineup in which she identified Mr. Freeman as the perpetrator.  (JA 333-335; JA 375).

Ms. Wilson's car was eventually recovered; she indicated that there were no bandage wrappers in it when the car was taken. (JA 332). A packaging resembling a bandage wrapper, however, was recovered from the car by law enforcement. (JA 572-573).

It was later determined that the Buick automobile was a manufactured in Canada. (JA 539).

## II.    The Bank Robbery.

The deposits of the Bank of America in Troutman, North Carolina are federally insured. (JA 388).

At around 9 a.m. on May 20, 2013, two men entered the Bank of America in Troutman. One of the men was wearing what appeared to be a dark hoodie with sunglasses. The other had a long-sleeved T-shirt and was wearing a dark blue baseball cap with gray stripes and dark glasses. The man wearing the ball cap also had a bandage on the right side of his face. (JA 412; JA 416-417). The man with the ball cap stated "Okay, ladies, this is a robbery," and took out his gun. He told the bank employees to put their hands up; they complied. The man with the ball cap told the teller to get out all of the money. (JA 418-419). He was standing on the counter and was pointing a silver handgun at the tellers. The tellers handed money to the man wearing the ball cap as he kept saying, "Put it in the bag," but had no bag. The man wearing the hoodie came over with a bag in which money also was placed. Both men

3

then left the bank; the man in the ball cap ran out with handfuls of money. (JA 420; JA 443-444; JA 456-459; JA 488-491).

A total of $5,100 was taken from the bank. (JA 492). One of the bank employees looked out the window and observed a champagne colored car with a "Pro-life" sticker on the back of it leave the premises. (JA 143). The bank employees were not shown photographs in order to identify the perpetrators. (JA 435; JA 449; JA 462; JA 497).

A bank customer that was entering the parking lot observed two men run to a car; one was holding money. (JA 500-501). The customer wrote down a partial license plate number that was provided to law enforcement. (JA 503-504).

Another man was in the Food Lion parking lot that was across the street from the bank. (JA 510-511). He saw "two people" run out of the bank, get in a gray colored Buick car and leave. (JA 512). This witness was able to take a picture of the back of the car by using his cell phone. (JA 514).

### III.    What Happened After the Bank Robbery.

Shortly after the robbery, an Iredell County Sheriff's K-9 deputy found a silver-colored Buick abandoned on I-77 in a direction headed away from Statesville toward Charlotte. (JA 517; JA 520-521; JA 524). The vehicle appeared to be recently driven as the engine was still warm. (JA 524-525). A North Carolina State Trooper had noticed that shortly before the bank robbery, an older silver Honda Accord or Civic

4

with paint missing from the front bumper was parked in the same area as where the Buick was later recovered. (JA 545-546). A Troutman K-9 officer conducted a search of the area where the Buick was recovered without results; it was concluded that whoever parked the Buick did not leave the area on foot. (JA 561-564).

On May 26, 2013, Mr. Freeman was observed involved in an altercation in Charlotte and subsequently made a phone call. (JA 595-596). Shortly thereafter, a person whom Mr. Freeman called "Jamaica" arrived in a small car, which one witness described as a "gray Honda or gray Civic" and had displayed a chrome handgun. (JA 607-608). Mr. Freeman and "Jamaica" then left the scene in the grey car. (JA 598; JA 609).

Jeremy Levine indicated that he knew Mr. Freeman. He also knew that Mr. Joseph went by the name of "Jamaica." (JA 623-624). Mr. Levine testified that Mr. Freeman had a marking on his neck and cheek. (JA 609). Approximately two days before the bank robbery, Mr. Levine had seen Mr. Joseph driving a faded bluish-greyish Honda with a bumper that was not the factory original. (JA 645-646). Mr. Levine indicated that he later had seen pictures of the bank robbery and identified the perpetrators as Mr. Freeman and Mr. Joseph. (JA 629-630). The defendants were shown the robbery pictures from the news; Mr. Freeman thought that Mr. Joseph was "ratting" on him while Mr. Joseph tried to explain that he was "just trying to find out what was going on." (JA 634-636). Mr. Freeman admitted to Mr. Levine that he

5

committed the bank robbery. (JA 637). Mr. Levine was informed by one of the defendants that they obtained $5100 from the bank robbery. (JA 638). Mr. Freeman told Mr. Levine that he wore sunglasses and put band-aides on is face to cover his scar. (JA 639). Mr. Joseph told Mr. Levine that he watched Mr. Freeman steal the car at the gas station and followed Mr. Freeman to a spot which was the halfway point between Charlotte and the bank, and that Mr. Joseph left his car and travelled with Mr. Freeman to rob the bank. The pair then returned to Mr. Joseph's car and left the stolen car on the roadside. Mr. Joseph indicated to Mr. Levine that he regretted doing the robbery with Mr. Freeman. (JA 642-643).

Benedict Okoduwa, an employee of Keith Hawthorne Ford in Charlotte, knew Mr. Joseph as a fellow employee. (JA 747). Mr. Okoduwa was shown a photograph from the robbery and indicated that he thought one of the bank robbers was Mr. Joseph. (JA 749-750).

Patrick Wilson, who also worked with Mr. Joseph at Keith Hawthorne Ford, testified that he, along with other employees, saw pictures on the news of the bank robbery and indicated that one of the bank robbers looked like Mr. Joseph. (JA 755). Mr. Joseph had been present in the showroom, but was gone as soon as the robbery pictures were seen on the news by the car dealer staff. (JA 756). Mr. Wilson was "100 percent" certain that the picture of one of the robbery suspects was Mr. Joseph. (JA 756).

An Automatic License Plate Reader [ALPD] had been installed in Charlotte as part of security measures for the Democratic Party national convention.  (JA 761).  A license tag corresponding to Mr. Joseph's vehicle was observed traveling southbound on 11th Street in Charlotte at 10:06 a.m. on the morning of May 20th.  (JA 771-772).  A detective with the Troutman Police Department travelled the route from the bank robbery to the 11th Street ALPD location and determined that the timing of the capture of Mr. Joseph's license plate corresponded to the length of time it took to drive from the bank robbery to the ALPD site in Charlotte.  (JA 781; JA 785).

### IV.    Procedural History, Trial, and Suppression Hearing.

On October 15, 2013, a grand jury in the United States District Court for the Western District of North Carolina returned a bill of indictment against Mr. Freeman and Mr. Joseph, charging them with one count of armed bank robbery in violation of 18 U.S.C. §§ 2113(a) and 2113(d), and aiding and abetting the same in violation of 18 U.S.C. § 2 (Count One), and possession of a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c), and aiding and abetting the same in violation of 18 U.S.C. § 2 (Count Two).  Mr. Freeman was also charged in Counts Three and Four with carjacking in violation of 18 U.S.C. § 2119 (Count Three) and possession of a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c) (Count Four).  (JA 19-21).

Mr. Freeman and Mr. Joseph proceeded to trial on May 12, 2014. (JA 11). Prior to trial, Mr. Freemen moved to suppress evidence of the photographic lineup presented to Ms. Wilson on the ground that it was unduly suggestive. (JA 22-25). During the suppression hearing, held during the trial, the evidence showed the following facts:

Charlotte-Mecklenburg Police Department ("CMPD") Detective Stephen Todd was the lead detective in investigating the carjacking that occurred at the Circle K on May 20, 2013. (JA 203-04.) Detective Todd spoke to Ms. Wilson about the carjacking and put together a photo lineup for her to view. (JA 204-05). The photo lineup included a photo of Mr. Freeman. (JA 205). Detective Todd chose CMPD Detective Michael Peacock to conduct the photo lineup. (JA 207).

Ms. Wilson viewed the photo lineup on June 3, 2015. (JA 205; JA 222; JA 238). Detectives Todd and Peacock drove together to Ms. Wilson's residence, and Detective Peacock showed Ms. Wilson the lineup in the vehicle while Detective Todd stood outside of the vehicle. (JA 207; JA 223). When Detective Peacock showed Ms. Wilson the lineup, she told him that she thought photo number five was the photo of the person who carjacked her. (JA 224; JA 229). Photo number five was a photo of Mr. Freeman. (JA 231). She then told Detective Peacock that she wanted to "keep looking to make sure," so he showed her the final photo, which was photo number six. (JA 224).

8

They went through the lineup again, and when they reached photo number five again, Ms. Wilson said, "Well, it looks like him, but he was wearing a hat and glasses." (JA 224-25). Detective Peacock then used his business card to cover up the top of Mr. Freeman's forehead in the photo, and Ms. Wilson told him that he was the person who carjacked her. (JA 225). She said she remembered him based on his lips, nose, ears, and shape of his head. (JA 225, 232). When asked how certain she was that photo number five was a photo of the person who carjacked her, she responded that she was pretty sure. (JA 225). Detective Peacock then had her sign the photo. (JA 225).

Prior to Ms. Wilson viewing the photo lineup, on May 22, 2013, Detective Todd informed Ms. Wilson that he believed her car was used in a bank robbery. (JA 212). On May 31, 2013, CMPD Detective Todd Stutts sent an email to Detective Todd in which he wrote, "I talked to Ms. Wilson today. She states that she has viewed the bank robbery pictures and is 100% positive the suspect with the bandage on his face is one that carjacked her." (JA 217). At the suppression hearing, Ms. Wilson testified that she was "100 percent positive" that the only time she saw the bank robbery photos was when Detective Todd showed them to her, but that he showed them to her after she viewed the photo lineup. (J.A. 254-55).

At the conclusion of the suppression hearing, the district court found that "there was no evidence that law enforcement presented [Ms. Wilson] with the bank robbery

photos before the [photo] lineup was conducted[.]  (JA 266).  Therefore, the court concluded that the procedure for presenting the lineup "was not unnecessarily suggestive" and there was "not a taint[.]"  (JA 266).  The court, however, noted that Ms. Wilson's testimony was contradicted by the email from Detective Stutts to Detective Todd, but immediately thereafter stated, "In any event, the motion will be denied."  (JA 266).  As such, the district court denied the motion to suppress and allowed evidence of the photo lineup identification to be offered at trial.

## V.    Verdict and Sentence.

On May 15, 2015, the jury returned guilty verdicts against Mr. Freeman on all counts and against Mr. Joseph on Counts One and Two.

On June 2, 2015 Mr. Freeman was sentenced to 63 months imprisonment on Counts One and Three, to run concurrently with one another; 84 months on Count Two, to run consecutively to the sentences for Counts One and Three; and 300 months on Count Four to run consecutively to the sentences for Counts One, Two, and Three, for a total sentence of 447 months imprisonment.  (JA 1047-48).  Mr. Joseph was sentenced to 51 months imprisonment on Count One and 84 months on Count Two, to run consecutively to the sentence for Count One, for a total sentence of 135 months imprisonment.   (JA 1054-55).  The judgments were entered on June 4, 2015.  (JA 1047-55).  Mr. Freeman and Mr. Joseph each timely filed notice of appeal.  (JA 1061-64).

## SUMMARY OF THE ARGUMENTS

I.     The district court erred in denying Mr. Freeman's motion to suppress evidence of the photographic lineup identification.  The court clearly erred in finding that Ms. Wilson was not exposed to photographs of a bank robbery in which Mr. Freeman was a suspect prior to being shown the photographic lineup.  There was substantial evidence that she did, in fact, see those photographs prior to the photo lineup and that she was informed that the carjacking and bank robbery were connected.  By viewing the bank robbery photographs prior to viewing the photographic lineup, Ms. Wilson was effectively led to presume that the person appearing in the bank robbery photos was the person who carjacked her.  It is highly likely that she selected the photo of Mr. Freeman out of the lineup based on that presumption; a presumption that supplanted her independent recollection.  Ultimately, the court erred in denying the motion to suppress because exposure to the bank robbery photos led to an unduly suggestive photographic lineup.

II.     It was plain error for the district court not to dismiss the 924(c) charge in Count Two.  Bank robbery is not a "crime of violence" under the categorical approach of *Descamps v. United States*, 570 U.S. ___, 133 S. Ct. 2276 (2013) or the "residual clause" of 18 U.S.C. § 924(c) under the new rule announced in *Johnson v. United States*, 576 U.S. ___, No. 13-7120 (Slip Op. June 26, 2015).  Because there are alternative means that the jury could have found Mr. Joseph or Mr. Freeman guilty of

bank robbery—that is, either by force or by intimidation—bank robbery is not a "crime of violence" under the "force clause" of 18 U.S.C. § 924(c). In addition, bank robbery does not qualify as a "crime of violence" under the "residual clause" of 18 U.S.C. 924(c). The Supreme Court held in *Johnson v. United States*, 576 U.S. ___, No. 13-7120 (Slip Op. June 26, 2015) that the "residual clause" of the Armed Career Criminal Act ("ACCA") regarding a sentencing enhancement for a previous "violent felony" conviction violated the Due Process clause of the Constitution due to vagueness. The definition of a "crime of violence" under 924(c) is substantially similar to the definition of a "violent felony" under the ACCA. As such, the "residual clause" of 924(c) violates the Mr. Joseph's and Mr. Freeman's Due Process rights as it is unconstitutionally vague. Thus, Mr. Joseph's and Mr. Freeman's convictions as to Count Two should be vacated.

III.    For the reasons stated above, the trial court's instruction to the jury regarding the 924(c) charge erroneously deemed bank robbery as a "crime of violence" and included in the instruction a constitutionally invalid definition of a "crime of violence." Consequently, Mr. Joseph's and Mr. Freeman's convictions as to Count Two should be vacated.

IV.    Just as bank robbery is not a crime of violence, neither is carjacking for the reasons discussed above. Carjacking is not a crime of violence under the "force clause" of 924(c), as the jury could have found Mr. Freeman guilty of carjacking either

by force or by intimidation.  Furthermore, application of the "residual clause" of 924(c) violated Mr. Freeman's Due Process rights due to unconstitutional vagueness. Therefore, for the reasons Count Two should be vacated, so should Count Four.

V.     As with the district court's instructions on bank robbery, the trial court's instructions to the jury regarding the 924(c) charge in relation to carjacking erroneously deemed carjacking as a "crime of violence" and included in the instruction a constitutionally invalid definition of a "crime of violence."  Consequently, Mr. Freeman's conviction as to Count Four should be vacated.

## ARGUMENT

## I.  THE DISTRICT COURT ERRED IN DENYING MR. FREEMAN'S MOTION TO SUPPRESS EVIDENCE OF A PHOTOGRAPHIC LINEUP IDENTIFICATION WHERE THE IDENTIFICATION PROCEDURE WAS UNDULY SUGGESTIVE.

In order to prove that Mr. Freeman was involved in the carjacking, the government offered evidence of a photographic lineup identification by Ms. Wilson. Upon viewing the lineup, Ms. Wilson identified a photograph of Mr. Freeman as a photo of the person she thought committed the carjacking.  Prior to the evidence being presented, however, Mr. Freeman moved to suppress it on the ground that the photographic lineup was unduly suggestive.  It was unduly suggestive because Ms. Wilson was informed prior to viewing the photographic lineup that her car had been linked to a bank robbery in which Mr. Freeman was a suspect and had been shown

13

photographs from the bank robbery. That information and previous exposure to the bank robbery tainted the subsequent photographic lineup. The trial court first clearly erred by finding that there was "no evidence" that Ms. Wilson saw the bank robbery photographs prior to the photographic lineup (JA 266), and then erred by denying the motion to suppress.

A.    Standard of Review.

On appeal from the denial of a motion to suppress, this Court reviews the district court's factual findings for clear error and conclusions of law *de novo*. *United States v. Hampton*, 628 F.3d 654, 648 (4th Cir. 2010) (citations omitted). When a motion to suppress was denied by the district court, this Court reviews the evidence in the light most favorable to the government. *Id.*

B.    Analysis.

1.    *The district court's finding that there was no evidence that Ms. Wilson saw the bank robbery photographs prior to viewing the photographic lineup was clearly erroneous.*

Before analyzing whether the photographic lineup presented to Ms. Wilson was unduly suggestive, it must first be determined whether the police showed her the bank robbery photographs prior to conducting the photo lineup. The district court found that there was no evidence that the police showed her the bank robbery photos before showing her the photo lineup. That finding is firmly contradicted by the evidence, however, and therefore it is clearly erroneous.

14

Ms. Wilson testified that she did not see photographs of the bank robbery suspects until after the photo lineup, which was conducted on June 3, 2013. (JA 254-55). Just because that was her testimony, however, does make it fact. In light of the May 31, 2013 email from Detective Stutts to Detective Todd stating that Ms. Wilson had seen the bank robbery photos as of that date and had informed Detective Stutts that she was positive that the person in the photos was the person who carjacked her (JA 217), her testimony could not have been based in fact. Her testimony was based on her memory of something that occurred nearly a year before the suppression hearing, and as such could not be deemed infallible. The email was documentation of what actually occurred and, unlike Ms. Wilson's memory, was infallible. Therefore, the district court not only clearly erred in finding as fact Ms. Wilson's testimony over the information contained in the email, but also in finding that there was no evidence that she saw the bank robbery photos prior to viewing the photographic lineup.

### 2.    *The identification procedure was unduly suggestive.*

It is well-established that a photographic identification must be excluded at trial where the police use "a suggestive and unnecessary" procedure resulting in the substantial likelihood of irreparable misidentification. *Perry v. New Hampshire*, 132 S. Ct. 716, 724 (2012) (quoting *Manson v. Brathwaite*, 432 U.S. 9 (1977) and *Neil v. Biggers*, 409 U.S. 188, 201 (1972)). If a suggestive procedure is used, the identification may only be salvaged if, "under the 'totality of the circumstances' the

identification was reliable even if the confrontation procedure was suggestive." *Biggers*, 409 U.S. at 199.

This Court uses a two-step approach in determining whether a photographic lineup identification should be suppressed. *See United States v. Saunders*, 501 F.3d 384, 389-90 (4th Cir. 2007). First, "the defendant must show that the photo identification procedure was impermissibly suggestive." *Id*. Next, the court must consider "whether the identification was nevertheless reliable in the context of all the circumstances." *Id*. If not, the identification must be suppressed. *Id*. at 390.

"A procedure is unnecessarily suggestive if a positive identification is likely to result from factors other than a witness's own recollection of the crime." *Satcher v. Pruett*, 126 F.3d 561, 566 (4th Cir. 1997). The Supreme Court has specifically recognized that the danger of misidentification is increased where "the police display to the witness only the picture of a single individual who generally resembles the person he saw;" where an individual's picture is more prominent or otherwise distinguished; where an individual recurs among several pictures or several lineups; and where police "indicate to the witness that they have other evidence that one of the persons pictured committed the crime." *Simmons v. United States*, 390 U.S. 377, 383-84 (1968).

Courts have recognized that exposure to media reports or other photographs of the defendant indicating his commission of the crime prior to viewing a photo lineup

16

are unduly suggestive. *See, e.g., United States v. Casteel*, 638 F.Supp.2d 1089, 1107 (S.D. Iowa 2009) (holding a second lineup impermissible in part because the witness "read a newspaper article with photographs which identified Defendants as suspects in her robbery"); *Bowlds v. State*, 834 N.E.2d 669, 678 (Ind. Ct. App. 2005) (holding lineup impermissibly suggestive where, in addition to the defendant visibly wearing a jumpsuit, the same photo had appeared in the local newspaper prior to witnesses viewing the lineup and one admitting to having seen it).

Here, Ms. Wilson's exposure to the bank robbery photographs was impermissibly suggestive and tainted her photographic identification of Mr. Freeman. Presenting Ms. Wilson with the bank robbery photos, and discussing with her the link between the carjacking and bank robbery, effectively communicated to her that the man who had carjacked her was in the photographs. This Court has recognized that indications by police to a witness that they have other evidence that that a person in a photograph committed a crime can taint a witness's photographic identification because that witness "can feel pressure to make an identification, even if not fully confident, for fear of jeopardizing the case." *Saunders*, 501 F.3d at 391. Those circumstances existed here, so Ms. Wilson's identification was likely tainted as a result.

Showing Ms. Wilson the bank robbery photographs created all the situations enumerated in *Simmons*, *supra*, that increase the danger of misidentification. She was

17

shown photographs of only two individuals under circumstances that very strongly suggested one of them was in fact the carjacker, and where one of the individuals was more prominently featured, showed up in multiple photos, and appeared to be acting in a manner reminiscent of carjacking. It was thus highly likely that a positive identification of the alleged gun-carrying bank robber would result from factors other than Ms. Wilson's own recollection. By showing Ms. Wilson the bank robbery stills prior to the lineup, the police were effectively inviting Ms. Wilson to compare Mr. Freeman to the pictures of the bank robbery based on her memory of the "image of the photograph rather than of the of the person actually seen." *Simmons*, 390 U.S. at 383-84.

Showing Ms. Wilson photos of the bank robbery was also unnecessary. At the time Ms. Wilson saw bank robbery photos, police already considered Mr. Freeman to be a suspect in the bank robbery. All they had to do to get a legally unquestionable identification would have been to show Ms. Wilson the same photo lineup before showing her the bank robbery photos. "Suggestive confrontations are disapproved because they increase the likelihood of misidentification, and unnecessarily suggestive ones are condemned for the further reason that the increased chance of misidentification is gratuitous." *Biggers*, *supra*, 409 U.S. at 198. The procedure here was both suggestive and gratuitous, and therefore constitutionally unsound.

### 3.     The photo lineup identification procedure was unreliable.

As discussed above, the identification procedure employed in this case was suggestive and unnecessary, and therefore due process requires its suppression unless the totality of circumstances show it was "nevertheless reliable." *Saunders*, 501 F.3d at 389-90. "Reliability is the linchpin in determining the admissibility of identification testimony." *Braithwait*, 432 U.S. at 114. In evaluating reliability, courts must consider the totality of the circumstances, specifically:

> [1] the opportunity of the witness to view the criminal at the time of the crime, [2] the witness' degree of attention, [3] the accuracy of the witness' prior description of the criminal, [4] the level of certainty demonstrated by the witness at the confrontation, and [5] the length of time between the crime and the confrontation.

*Biggers*, 409 U.S. at 199-200.

Here, the circumstances show that Ms. Wilson's identification was unreliable. She told Detective Peacock that she "thought" photograph number five was a photograph of the carjacker and asked to keep looking after viewing the photograph. This alone suggests that she thought pictures of the real carjacker could be elsewhere in the lineup, if such a picture were there at all. After the second viewing, she told Detective Peacock that she was merely "pretty sure" that the photograph was of the carjacker.

The other *Biggers* factors also weigh against a finding that Ms. Wilson's identification was reliable. She only saw the carjacker for a brief moment. It was

approximately 5:15 a.m. and therefore dark.  Two weeks passed between the time of the carjacking and the time the photo lineup was presented to her.

Under the totality of the circumstances, it cannot be said that Ms. Wilson's identification was reliable, and certainly not so reliable as to overcome the suggestive nature of the identification procedure.  Consequently, evidence of the photo identification should have been suppressed.  The error was not harmless because Ms. Wilson's photo identification was essential to convict Mr. Freeman of Counts Three and Four.  It is unlikely those convictions could be sustained without the evidence.

## II. MR. JOSEPH'S AND MR. FREEMAN'S SENTENCES IMPOSED PURSUANT TO TITLE 18, SECTION 924(c) OF THE UNITED STATES CODE MUST BE VACATED AS BANK ROBBERY IS NOT "A CRIME OF VIOLENCE" IN THIS CASE.

The district court denied Mr. Joseph's and Mr. Freeman's motions for judgment of acquittal which were made at the close of the Government's evidence.  The motion was based on a sufficiency of evidence argument.  (JA 848-850).  Their motions for judgment of acquittal which were renewed on the same basis following presentation of all of the evidence were also denied.  (JA 893-894).  The jury returned guilty verdicts as to Count One for bank robbery and to Count Two of the indictment finding that they had brandished a firearm during and in relation to a crime of violence in  violation of 18 U.S.C. § 924(c).  (JA 1014-1016).  Mr. Joseph and Mr. Freeman were each subsequently sentenced to a term of 84 months for brandishing a firearm in violation of

18 U.S.C. § 924(c); this to run at the expiration of the 51-month sentence imposed for the bank robbery conviction for Mr. Joseph and 63-month sentence for Mr. Freeman. (JA 1043; JA 1054-1060). Mr. Joseph and Mr. Freeman respectfully contend that the 924(c) charge should have been dismissed as bank robbery is not a "crime of violence" under the categorical approach of *Descamps v. United States*, 570 U.S. ___, 133 S. Ct. 2276 (2013) or the "residual clause" of 18 U.S.C. § 924(c) under the new rule announced in *Johnson v. United States*, 576 U.S. ___, No. 13-7120 (Slip Op. June 26, 2015).

A.     Standard of Review.

Mr. Joseph and Mr. Freeman did not raise the argument that bank robbery was not a crime of violence for 924(c) purposes; the review by this Court consequently is for plain error. *See United States v. Evans*, 416 F.3d 298, 300 (4th Cir.2005)(Standard of review). To establish plain error, Mr. Joseph and Mr. Freeman must show that an error occurred, that the error was plain, and that the error affected their substantial rights. *United States v. Olano*, 507 U.S. 725, 732, 113 S. Ct. 1770 (1993).

B.     Analysis

To sustain a conviction under 18 U.S.C. § 924(c), the government must prove that the defendant (1) used or carried a firearm and (2) did so during and in relation to a "crime of violence." Section 924(c)(3) defines a "crime of violence" as "an offense that is a felony and (A) has as an element the use, attempted use, or threatened use of

21

physical force against the person or property of another, or (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 924(c)(3). Section 924(c)(3)(A) is referred to as the "force clause," while section 924(c)(3)(B) is called the "residual clause." *United States v. Fuertes*, Nos. 13-4755, 13-4931 (4th Cir. Slip Op. August 18, 2015, pp. 21-22).

Mr. Joseph and Mr. Freeman contend that bank robbery is not a "crime of violence" under either the "force clause" or "residual clause" of 18 U.S.C. § 924(c).

> 1.    *Bank Robbery is not a "crime of violence" under the "force clause" of 924(c).*

The relevant elements of bank robbery are:

> Whoever, *by force and violence, or by intimidation,* takes ... from the person or presence of another ... any property or money ... belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association.

*United States v. Walker*, 75 F.3d 178, 180 (4th Cir. 1996)(Emphasis added); 18 U.S.C. § 2113(a).

To determine whether a particular offense is a crime of violence under the force clause, the Court may employ the "categorical approach" or the "modified categorical approach." *Descamps v. United States*, 570 U.S. ___, 133 S. Ct. 2276, 2283 (2013); *Fuertes*, Slip Op. p. 22. The categorical approach applies when a defendant was convicted of an offense under "an `indivisible' statute, *i.e.*, one not containing

alternative elements." *Descamps*, 133 S. Ct. at 2281. The bank robbery statute is not a divisible statute. *See United States v. Woodrup*, 86 F.3d 359, 363-364 (4th Cir. 1996) (rejecting argument that proof of intimidation required to convict of bank robbery). Thus the categorical approach applies, as 18 U.S.C. § 2113(a) sets forth alternative means of committing the crime, as opposed to alternative elements. *Descamps*, 133 S. Ct. at 2285.

Under the "categorical approach," the court looks only to the fact of conviction and the statutory definition of the offense; not at the particular facts disclosed by the record of conviction. *Fuertes*, Slip Op. p. 23 (Internal citations omitted). "The point of the categorical inquiry is not to determine whether the defendant's conduct could support a conviction for a crime of violence, but to determine whether the defendant was in fact convicted of a crime that qualifies as a crime of violence." *United States v. Cabrera-Umanzor*, 728 F.3d 347, 350 (4th Cir. 2013).

A bank robbery can be accomplished by either "force and violence or intimidation." 18 U.S.C. § 2113(a). Because there are alternative means that the jury could have found Mr. Joseph or Mr. Freeman guilty of bank robbery, bank robbery is not a "crime of violence" under the "force clause" of 18 U.S.C. § 924(c). *See Descamps*, 133 S. Ct. at 2293 (enhancement improper for burglary as a "violent felony" under Armed Career Criminal Act [ACCA], 18 U.S.C. § 924(e)(1)). Mr. Joseph and Mr. Freeman therefore cannot be convicted of a 924(c) violation under its "force clause."

> 2. *Mr. Joseph's and Mr. Freeman's convictions cannot be sustained under the "residual clause" of 924(c).*

Bank robbery also does not qualify as a "crime of violence" under the "residual clause" of 18 U.S.C. 924(c). The Supreme Court has announced a new rule of law in *Johnson v. United States*, 576 U.S. \_\_\_, No. 13-7120 (Slip Op. June 26, 2015) finding that the "residual clause" of ACCA regarding a sentencing enhancement for a previous "violent felony" conviction violated the Due Process clause of the Constitution due to vagueness. The definition of a "crime of violence" under 924(c) is substantially the same as the definition of a "violent felony" under ACCA.[1] Application of the "residual clause" of 924(c) therefore violates the Mr. Joseph's and Mr. Freeman's Due Process rights as it is unconstitutionally vague. *See Johnson*, Slip. Op. p.15.

The error is plain regardless of whether the "force clause" or "residual clause" of 18 U.S.C. § 924(c) is employed. The error affected Mr. Joseph's and Mr. Freeman's rights to Due Process of law. Accordingly, Mr. Joseph's and Mr. Freeman's 924(c) convictions should be vacated. *Olano*, 507 U.S. at 732.

---

[1] "[T]he term 'violent felony' means any crime punishable by imprisonment for a term exceeding one year … involving the use or carrying of a firearm, knife, or destructive device that … (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another. 18 U.S.C. § 924(e)(2)(B).

III.  **THE DISTRICT COURT COMMITTED PLAIN ERROR IN ITS JURY INSTRUCTION THAT DEFINED BANK ROBBERY AS "A CRIME OF VIOLENCE" UNDER TITLE 18 UNITED STATES CODE SECTION 924(c) AND IMPROPERLY INCLUDED THE "RESIDUAL CLAUSE" AS PART OF THE DEFINITION OF A "CRIME OF VIOLENCE."**

The trial court had instructed the jury, in pertinent part:

Now, as to count two, that would be the gun charge that is related to the charge in count one … Now, the statutes that come into play here are Section 924(c) which provides that any person who, during and in relation to any crime of violence for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who in furtherance of any such crime possesses a firearm shall be guilty of an offense against the United States.

And another section provides that any person who, during and in relation to any *crime of violence*, *that would refer in this case to the crime alleged in count one, bank robbery,* for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm and brandishes that firearm shall be guilty of an offense against the United States[…]

For you to find a defendant guilty of the offense charged in count two, the government must prove the following essential elements beyond a reasonable doubt: … *First, the defendant committed a crime of violence, namely, bank robbery as described in count one.* Two, that defendant used or carried a firearm during and in relation to the commission of the *crime of violence described in count one*; or that defendant possessed the firearm in furtherance of the commission of the *crime of violence* described in count one[…]

Now, certain words defined in connection with count one also apply to count two… *Now, the term "crime of violence" referred to in count two means an offense that is a felony and has as one of its essential elements the use, attempted use or threatened use of physical force against the person or property of another, or an offense that is by its very nature involving a substantial risk that such physical force may be used in*

> *committing the offense. The offense alleged in count one of the indictment, bank robbery, is a crime of violence under that definition.*

(JA 976-977)(Emphasis added). Defense counsel for Mr. Joseph and Mr. Freeman did not object to this instruction. (JA 877-891; JA 910).

Mr. Joseph and Mr. Freeman respectfully contend the trial court's instruction to the jury regarding the 924(c) charge erroneously deemed bank robbery as a "crime of violence" and included in the instruction a constitutionally invalid definition of a "crime of violence."

A.    Standard of Review.

A claim of error as to whether jury instructions correctly explain the elements of the offense is reviewed *de novo*. *United States v. Terry*, 911 F.2d 272, 278-79 (9th Cir.1990). Jury instructions are considered as a whole to ensure that they are not misleading or inadequate. *Id.* Since Mr. Joseph and Mr. Freeman did not object to the instructions, the Court reviews them for plain error. *United States v. Tillery*, 702 F.3d 170, 175 (4th Cir. 2012).

B.    Analysis.

1.    *The district court's jury instruction that bank robbery is a "crime of violence" was erroneous.*

The trial court's instruction to the jury regarding the 924(c) charge referred to bank robbery as a "crime of violence" three times. (JA 975-977). As discussed in Section I.B.1, *supra*, bank robbery is not a crime of violence under the "force clause"

of 924(c), as 18 U.S.C. § 2113(a) is an indivisible statute which permits a jury to find a defendant guilty of bank robbery by intimidation. *See Woodrup*, 86 F.3d at 363-364; *Descamps*, at 2293. Furthermore, bank robbery cannot be a "crime of violence" under the "residual clause" of 924(c) as the almost identical language of ACCA's residual clause has been found to be a violation of the right to Due Process under the United States Constitution. *Johnson*, Slip Op. p. 15; *See* Section I.B.2, *supra*. Mr. Joseph's and Mr. Freeman's 924(c) convictions therefore should be set aside as the instructional error is plain and affected their rights to Due Process of law. *See Olano*, 507 U.S. at 732 (Plain error analysis).

>    2.    *The district court's jury instruction which used the "residual clause" of Section 924(c) to define a "crime of violence" was erroneous.*

The Supreme Court has established a new rule of law that finds ACCA's residual clause to be constitutionally vague and therefore a violation of a defendant's right to Due Process. *Johnson*, Slip Op. p. 15. As discussed in Section I, *supra*, the "residual clause" of Section 924(c) which defines a "crime of violence" is substantially the same as the definition of a "violent felony" under ACCA. *A fortiori*, the "residual clause" of Section 924(c) also is constitutionally infirm and cannot be used to convict Mr. Joseph and Mr. Freeman of possession of a firearm during and in relation to a crime of violence.

Again, Mr. Joseph's and Mr. Freeman's 924(c) convictions therefore should be set aside as the instructional error is plain and affected their rights to Due Process of law. *See Olano*, 507 U.S. at 732 (Plain error analysis).

> 3. *The 924(c) conviction must be set aside as the verdict form does not specify whether the jury relied on the "force clause" or "residual clause" to convict Mr. Joseph and Mr. Freeman.*

In the event that the Court finds that bank robbery is a crime of violence for 924(c) purposes under the "force clause," Mr. Joseph's and Mr. Freeman's 924(c) convictions still cannot stand.  The verdict forms completed by the jury which found Mr. Joseph and Mr. Freeman guilty of violating Section 924(c) stated:

> Do you find unanimously and beyond a reasonable doubt that on or about the date alleged, within the Western District of North Carolina, [Defendants Joseph and Freeman] knowingly, willfully, and unlawfully a) used or carried a firearm during and in relation to the commission of armed bank robbery as described in Count One, or b) possessed a firearm in furtherance of the commission of armed bank robbery as described in Count One, or otherwise aided, abetted, counseled, commanded, induced, or procured the commission of the offense described in this Count Two?

(JA; 1010; JA 1015).  There is no way to determine from the verdict form whether the jury relied on the "force clause" or the unconstitutional "residual clause."

"It has long been settled that when a case is submitted to the jury on alternative theories the unconstitutionality of any of the theories requires that the conviction be set aside." *Sandstrom v. Montana*, 442 U.S. 510, 526, 99 S. Ct. 2450 (1979)(Citing *Stromberg v. California*, 283 U. S. 359, 51 S. Ct. 532 (1931)).  Since the "residual

clause" of 924(c) is unconstitutional for the reasons previously stated in Section I.B.2, *supra*, and it cannot be discerned whether the jury's verdict was based on the constitutionally defective jury instruction, Mr. Joseph's and Mr. Freeman's 924(c) convictions should be set aside. *Sandstrom*, 442 U.S. at 526.

The instructional error was plain and effected Mr. Joseph's and Mr. Freeman's substantial rights to Due Process of law. *See Olano*, 507 U.S. at 732 (Discussing plain error analysis). The error cannot be deemed harmless, "since the verdict might have resulted from the incorrect instruction." *Brotherhood of Carpenters v. United States*, 330 U.S. 395, 409, 67 S. Ct. 775 (1947). Mr. Joseph and Mr. Freeman therefore are entitled to have their 924(c) convictions vacated.

## IV. MR. FREEMAN'S SENTENCE FOR COUNT FOUR IMPOSED PURSUANT TO TITLE 18, SECTION 924(c) OF THE UNITED STATES CODE MUST BE VACATED AS CARJACKING IS NOT "A CRIME OF VIOLENCE" IN THIS CASE.

After being convicted of carjacking in violation of 18 U.S.C. § 2119 as charged in Count Three and brandishing a firearm during the carjacking in violation of 18 U.S.C. § 924(c) as charged in Count Four, Mr. Freeman was sentenced to a term of 300 months for Count Four, to run at the expiration of all other counts. (JA 1030; JA 1048). Mr. Freeman respectfully contends that the 924(c) charge should have been dismissed as carjacking is not a "crime of violence" under the categorical approach of *Descamps, supra*, or the "residual clause" of 18 U.S.C. § 924(c) under *Johnson, supra.*

A.     Standard of Review.

Mr. Freeman did not raise the argument that carjacking was not a crime of violence for 924(c) purposes; the review by this Court consequently is for plain error. *See Evans*, 416 F.3d at 300. To establish plain error, Mr. Freeman must show that an error occurred, that the error was plain, and that the error affected his substantial rights. *Olano*, 507 U.S. at 732.

B.     Analysis.

The federal carjacking statute, 18 U.S.C. § 2119, contains language substantially similar to that of the bank robbery statute discussed in Section II above. The relevant elements of carjacking are: "Whoever, with the intent to cause death or serious bodily harm takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another *by force and violence or by intimidation*, or attempts to do so…." 18 U.S.C. § 2119. Thus, like the bank robbery statute, the carjacking statute is not a divisible statute. *See Woodrup*, *supra,* 86 F.3d at 363-364. Similarly, the categorical approach applies, as 18 U.S.C. § 2119 sets forth alternative means of committing the crime, as opposed to alternative elements. *Descamps*, 133 S. Ct. at 2285. Therefore, for the reasons discussed in Section II.B.1 above, Mr. Freeman could not be convicted of a 924(c) violation under its "force clause" as it relates to the carjacking statute.

For the reasons discussed in Sections II.B.2 above, carjacking does not qualify as a "crime of violence" under the "residual clause" of 18 U.S.C. 924(c). Application of the "residual clause" of 924(c) therefore violates Mr. Freeman's Due Process right as it is unconstitutionally vague. *See Johnson*, Slip. Op. p.15.

As stated above, the error is plain regardless of whether the "force clause" or "residual clause" of 18 U.S.C. § 924(c) is employed. It affected Mr. Freeman's right to Due Process of law. Accordingly, Mr. Freeman's 924(c) conviction under Count Four should be vacated. *Olano*, 507 U.S. at 732.

## V.  THE DISTRICT COURT COMMITTED PLAIN ERROR IN ITS JURY INSTRUCTION THAT DEFINED CARJACKING AS "A CRIME OF VIOLENCE" UNDER TITLE 18 UNITED STATES CODE SECTION 924(c) AND IMPROPERLY INCLUDED THE "RESIDUAL CLAUSE" AS PART OF THE DEFINITION OF A "CRIME OF VIOLENCE."

With regard to the instruction for Count Four, the trial court instructed the jury in pertinent part:

> Now, lastly we come to count four, the gun charge that is relative to the charge of carjacking alleged in count three.

> I already read to you Section … 924(c), that is, that any person who, during and in relation to any crime of violence for which a person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm shall be guilty of an offense against the United States.

> And then it also has the concomitant statute. Any person who, during and in relation to a crime of violence for which a person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in

31

furtherance of any such crime, possesses a firearm and brandishes that firearm shall be guilty of an offense against the United States.

So the essential elements break out as follows:

For you to find the defendant Freeman guilty of the offense charged in count four, the government must prove the following essential elements beyond a reasonable doubt:

*First, that defendant committed a crime of violence, namely, carjacking as described in count three.*

Second, that during and in relation to *that crime of violence*, defendant used or carried a firearm; or

In furtherance of the *crime described in count three*, defendant possessed a firearm.

And lastly, that he did these acts knowingly, willfully, and unlawfully. You'll note that this charge against defendant Freeman is the same as that charged against him in count two. In that count it's also alleged against defendant Joseph. But in count two, that has reference to a different alleged underlying crime of violence. That would be bank robbery. *But you may refer back and apply here the same definitions for the essential terms that were provided in connection with count two by their same definitions….*

*The term "crime of violence" means an offense that's a felony and has as one of its essential elements the use, attempted use or threatened use of physical force against the person or property of another or an offense that by its very nature involves a substantial risk that such physical force may be used in committing the offense. The offense alleged in count three of the indictment, carjacking, is a crime of violence.*

So wrapping up on count four, I summarize as follows:

If you find from the evidence beyond a reasonable doubt that on or about the date alleged, the defendant committed a *crime of violence, namely, carjacking as described in count three*;

32

Second, that during and in relation to the crime of violence, defendant used or carried a firearm; or

*Defendant possessed a firearm in furtherance of the crime described in count three*;

And that defendant did all such acts knowingly, willfully, and unlawfully, then it would be your duty to return a verdict of guilty as to charge -- count four….

(JA 989-992) (Emphasis added).  Mr. Freeman did not object to this instruction.  (JA 879-91; JA 910).

As with the erroneous 924(c) charge as it related to bank robbery, the trial court's instruction to the jury regarding the 924(c) charge in Count Four erroneously deemed carjacking as a "crime of violence" and included in the instruction a constitutionally invalid definition of a "crime of violence."

A.    Standard of Review.

A claim of error as to whether jury instructions correctly explain the elements of the offense is reviewed *de novo*. *Terry*, 911 F.2d at 278-79. Jury instructions are considered as a whole to ensure that they are not misleading or inadequate. *Id*.  Since Mr. Freeman did not object to the instructions, the Court reviews them for plain error. *Tillery*, 702 F.3d at 175.

B.    Analysis.

As discussed in Section IV.B, *supra*, carjacking is not a crime of violence under the "force clause" of 924(c), as 18 U.S.C. § 2113(a) is an indivisible statute which

33

permits a jury to find a defendant guilty of carjacking by intimidation. *See Woodrup*, 86 F.3d at 363-364; *Descamps*, at 2293. Furthermore, carjacking cannot be a "crime of violence" under the "residual clause" of 924(c) as the almost identical language of ACCA's residual clause has been found to be a violation of the right to Due Process under the United States Constitution. *Johnson*, Slip Op. p. 15; *See* Section I.B.2, *supra*.

The verdict form completed by the jury which found Mr. Freeman guilty of violating Section 924(c) as charged in Count Four stated:

> Do you find unanimously and beyond a reasonable doubt that, on or about the date alleged, within the Western District of North Carolina, Defendant Freeman knowingly, willfully, and unlawfully a) used or carried a firearm during and in relation to the commission of carjacking as described in Count Three, or b) possessed a firearm in furtherance of the commission of carjacking as described in Count Three?

(JA 1012). There is no way to determine from the verdict form whether the jury relied on the "force clause" or the unconstitutional "residual clause." Since the "residual clause" of 924(c) is unconstitutional for the reasons previously stated and it cannot be discerned whether the jury's verdict was based on the constitutionally defective jury instruction, Mr. Freeman's 924(c) conviction as to Count Four should be set aside. *See Sandstrom*, *supra*, 442 U.S. at 526.

For the reasons Mr. Freeman's conviction as to Count Two should be set aside, as discussed above in Section III.B, Mr. Freeman's 924(c) conviction as to Count Four

should be set aside as the instructional error is plain and affected his right to Due Process of law. *See Olano*, 507 U.S. at 732. The error cannot be deemed harmless, "since the verdict might have resulted from the incorrect instruction." *Brotherhood of Carpenters*, 330 U.S. 395 at 409.

## CONCLUSION

For the reasons stated above, this Court should: (1) vacate Mr. Freeman's convictions and sentences; (2) reverse the district court's order denying Mr. Freeman's motion to suppress; (3) remand Mr. Freeman's case for a new trial; and (4) vacate Mr. Joseph's conviction and sentence as to Count Two.

## REQUEST FOR ORAL ARGUMENT

The Defendant-Appellants request that an oral argument be allowed in this case pursuant to F.R.A.P. 34, as oral argument would most likely benefit this Court in its understanding of the issues and arguments in support of those issues.

Respectfully submitted this 29th day of October.

/s/ C. Melissa Owen
C. Melissa Owen
Tin, Fulton, Walker
  & Owen, PLLC
301 East Park Avenue
Charlotte, NC  28203
(704) 338-1220

*Counsel for Appellant*
  *Darius Freeman*

35

/s/ Brian M. Aus

Brian M. Aus
BRIAN AUS,
  ATTORNEY AT LAW
P.O. Box 1345
Durham, NC  27702
(919) 666-7690

*Counsel for Appellant*
  *Wincy Joseph*

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>
**Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements**

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

this brief contains <u>8,746</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

this brief has been prepared in a proportional spaced typeface using <u>Microsoft Word</u> in <u>14 point Times New Roman</u>.

/s/ C. Melissa Owen
C. Melissa Owen

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on October 29, 2015, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to all registered CM/ECF users.

The necessary filing and service were performed in accordance with the instructions given to me by counsel in this case.

/s/ Karen R. Taylor
Karen R. Taylor
GIBSON MOORE APPELLATE SERVICES, LLC
P.O. Box 1460
Richmond, VA  23218
(804) 249-7770